ORIGINAL

# In the United States Court of Federal Claims

No. 13-16C

(Filed: May 2, 2014)

FILED

MAY  2 2014

U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| **CHARLOTTE TAYLOR-TILLOTSON,** ) | Former spouse's claim for benefits under the Armed Forces Reserve Component Survivor Benefit Plan; 10 U.S.C. § 1448(a)(2)(B); qualifying reserve service; effect of divorce prior to death of reserve component service member |
| **Plaintiff,** ) | |
| **v.** ) | |
| **UNITED STATES,** ) | |
| **Defendant.** ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Charlotte Taylor-Tillotson, *pro se*, and on behalf of Lawrence Joseph Tillotson (deceased), Lake Worth, Florida.

Michael D. Snyder, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Stuart F. Delery, Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Major Wayne H. Williams, United States Army Litigation Division, Fort Belvoir, Virginia.

## OPINION AND ORDER

LETTOW, Judge.

In this military benefits case, plaintiff, Ms. Charlotte Taylor-Tillotson, seeks review of a military board decision denying her survivor benefits after the death of Lawrence Joseph Tillotson. Ms. Taylor-Tillotson claims that she is entitled to an annuity under the Reserve Component Survivor Benefit Plan ("RCSBP"). Compl. ¶¶ 50-51.[1] The RCSBP is an insurance-style program administered by the Department of Defense under the authority of 10 U.S.C. § 1448, allowing an eligible reservist to provide an annuity to a surviving spouse. Eligibility for this program includes a minimum number of years of qualifying service on the part of the service member and eligible marital status between the service member and the person seeking payment.

---

[1] She also seeks Dependency and Indemnity Compensation ("DIC"), provided by the Department of Veterans Affairs under 38 U.S.C. § 1310(a). Compl. ¶¶ 50-51.

*See* 10 U.S.C. § 1448(a)(2)(B).[2]  The Army Board for Correction of Military Records ("Army Board") denied her petition for a RCSBP annuity, stating that (1) she was not eligible under the program because she and Mr. Tillotson were not married at the time of his death and (2) Mr. Tillotson was not eligible to participate in the program because he had not completed the necessary years of qualifying service.  AR 4-74 to -79 (Army Board decision).[3]  Pending before the court are defendant's Motion to Dismiss, or in the Alternative, Motion for Judgment on the Administrative Record ("Def.'s Mot."), ECF No. 27, and plaintiff's Cross-Motion for Judgment on the Administrative Record ("Pl.'s Cross-Mot."), ECF No. 36.

---

[2]For reserve-component participants, Section 1448 provides in part:

(a)  General rules for participation in the Plan. —
    (1) Name of Plan; eligible participants. — The program established
by this subchapter shall be known as the Survivor Benefit Plan.  The
following persons are eligible to participate in the Plan:
        (A)  Persons entitled to retired pay.
        (B)  Persons who would be eligible for reserve-component
        retired pay but for the fact that they are under 60 years of age.
    (2) Participants in the Plan. — The Plan applies to the following persons,
who shall be participants in the Plan:
        (A)  Standard annuity participants. . . .
        (B)  Reserve-component annuity participants. — A person who (i) is
eligible to participate in the Plan under paragraph (1)(B), and (ii) is married or
has a dependent child when he is notified under section 12731(d) of this title
that he has completed the years of service required for eligibility for reserve-
component retired pay, unless the person elects (with his spouse's concurrence,
if required under paragraph (3)) not to participate in the Plan before the end of
the 90-day period beginning on the date on which he receives that notification.

A person who elects under subparagraph (B) not to participate in the Plan remains
eligible, upon reaching 60 years of age and otherwise becoming entitled to retired
pay, to participate in the Plan in accordance with eligibility under paragraph (1)(A).

10 U.S.C. § 1448(a).

[3]Citations to the administrative record refer to the record filed on April 22, 2013 pursuant to Rule 52.1(a) of the Rules of the Court of Federal Claims ("RCFC").  The record is paginated sequentially and also divided into tabs.  In citing to the administrative record, the court will first designate the numeric tab, including an alphabetic addendum if applicable, followed by page number, *e.g.*, AR 4-74 refers to page 74, which is located in tab 4 of the record.

2

## FACTS[4]

From March 17, 1969 until August 1, 1983, Mr. Tillotson was a member of the Army Reserves. AR 8I-105 to -06 (Army National Guard Retirement Points History Statement for Lawrence Tillotson); *see also* AR 4-76. He then served on active duty in the Army from August 2, 1983 until December 10, 1991. AR 8D-97; *see also* AR 8I-105 to -06. After this service, he was honorably discharged to care for his elderly parents. AR 4-76. On February 14, 1992, Mr. Tillotson reentered military service as a member of the Montana Army National Guard. AR 4-76, 8I-105 to -06. He held this position until his death on May 3, 1995. AR 8I-105, 10B-442 (death certificate for Lawrence Tillotson). In total, Mr. Tillotson served 21 years, 10 months, and 29 days, of which the final 3 years, 2 months, and 20 days were served as a member of the Montana Army National Guard. AR 8I-105; AR 4-76.

While in the Army Reserves, on August 28, 1977, Mr. Tillotson married Charlotte Taylor in Montana. AR 8B-93 (marriage license). Two years later, on October 24, 1979, the couple entered into a property settlement agreement indicating marital separation. AR 10D-563 to -65 (property settlement agreement). On November 21, 1979, the Montana state court dissolved the marriage, stating that Ms. Taylor-Tillotson came before it alleging that the marriage was irretrievably broken, and restored to Ms. Taylor-Tillotson her maiden name. Decree of Dissolution, ECF No. 16-1.[5] The decree states that Mr. Tillotson neither responded to Ms. Taylor-Tillotson's Petition for Dissolution of Marriage nor appeared before the court. *Id.* The decree also states that Ms. Taylor-Tillotson was in attendance, *id.*, but she disputes that she actually appeared, stating that she was in the hospital at the time, Hr'g Tr. 7:24 to 8:5 (Dec. 3, 2013).[6] In the years thereafter, Mr. Tillotson's military records reflect that he designated himself as being divorced. *See* AR 10B-455 (life insurance election form (Nov. 5 1994)); AR 10B-490 (progressing record (Jan. 23, 1992)); AR 10C-529 (application for identification card, (Aug. 29, 1989)). Nonetheless, he appears to have received housing allowance for a spouse for two months in 1991. *See* AR 9-394 (pay information of Mr. Tillotson for Nov. 1991); AR 9-396 (pay information of Mr. Tillotson for Dec. 1991). Ms. Taylor-Tillotson argues that notwithstanding the divorce decree, she continued to live with him as a common law wife. *See* Mot. for Court to

---

[4]The factual recitations that follow are drawn from the administrative record of proceedings before the Army Board.

[5]Initially, after conducting a general search, the State of Montana, Department of Public Health and Human Services, and the Clerk of the District Court in Montana were unable to locate the divorce record for Mr. Tillotson and Ms. Taylor-Tillotson, *see* AR 1-26, AR 10A-441, but the Clerk of Court was subsequently able to find the divorce decree by conducting a more specific search, *see* Def.'s Mot. at 10 n.4.

Ms. Taylor-Tillotson states that she filed suit in Montana state court to have the divorce decree set aside, but her efforts in that respect were unsuccessful. *See* Hr'g Tr. 5:15 to 6:4 (Dec. 3, 2013).

[6]Further citations to the hearing held on December 3, 2013 will omit reference to the date.

Take Judicial Notice, ECF No. 26. Mr. Tillotson's death certificate records him as divorced. AR 10B-442.[7]

On May 10, 2011, six years after Mr. Tillotson's death, Ms. Taylor-Tillotson was denied disabled widow's benefits from the Social Security Administration. *See* AR 1-34 to -44. She then filed an application for Dependency and Indemnity Compensation (DIC), Death Pension and Accrued Benefits with the Department of Veterans Affairs. AR 1-13 to -20. On this application she wrote, "Please determine if I am entitled to benefits." AR 1-13. She stated that she did not know the cause of their marital separation and "did not live with [Mr. Tillotson] on the day he died." AR 1-15. At several places on the application form, she responded "unknown," citing memory issues. *See* AR 1-14 to -15. The Department of Veterans Affairs sought additional information from her, but when she did not provide the requested documentation, it denied her claim in a decision dated March 8, 2013. *See* AR 1-1 to -5. Although the agency informed her of her right to appeal this decision, AR 1-1, no appeal appears to have been filed.

On December 7, 2011, Ms. Taylor-Tillotson applied for RCSBP benefits. AR 8G-100 to -01. Benefits were denied by the Army on the ground that Mr. Tillotson had not completed the required 20 years of service. AR 8H-102.[8] She appealed this decision to the Army Board, which denied her application on October 16, 2012 because (1) although Mr. Tillotson served over 20 years, he did not serve the last 6 years as a Reserve Component soldier, as required by 10 U.S.C. § 12731(a), AR 4-74 to -79; *see also* Def.'s Mot. at 6, and (2) Mr. Tillotson was not married at the time of his death, AR 4-79. The Board did not have the divorce decree before it; it reached its conclusion about his marital status based upon Mr. Tillotson's military records and his death

---

[7] In or around January 2012, Ms. Taylor-Tillotson sought to amend the death certificate to reflect that Mr. Tillotson was married to her at the time of his death. *See* AR 10A-414 (Letter from Julie Cleveland, Montana Department of Public Health and Human Services to Taylor-Tillotson (Jan. 23, 2012)). The Montana Department of Public Health and Human Services required her to present a certified court order directing Montana Vital Records to change the marital status before it would change his death certificate. *Id.* On April 3, 2012, Ms. Taylor-Tillotson filed suit in the United States District Court for the Southern District of Florida, where she was living, asking the court to issue an order to change the death certificate. *See* Complaint, *Taylor-Tillotson v. Montana Dep't of Public Health & Human Servs.*, No. 12-cv-80352-KLR (S.D. Fla. Apr. 3, 2012). The court dismissed her claim for lack of subject matter jurisdiction. Order Dismissing Case for Lack of Jurisdiction, *Taylor-Tillotson v. Montana Dep't of Public Health & Human Servs.*, Case No. 12-cv-80352-KLR (S.D. Fla. Apr. 16, 2012). An appeal to the United States Court of Appeals for the Eleventh Circuit was not successful. *See* Order, *Taylor-Tillotson v. Montana Dep't of Health & Human Servs.*, No. 12-13068 (11th Cir. Oct. 12, 2012).

[8] The Army initially stated that Mr. Tillotson completed 14 years, 8 months, and 9 days of service, AR 8H-102, but this record was subsequently corrected to reflect the proper period of service, *viz.*, 21 years, 10 months, and 29 days, *see* Def.'s Mot. at 3.

certificate. *See* AR 4-76 to -79.[9]  Ms. Taylor-Tillotson filed her claims in this court on January 7, 2013, proceeding *pro se*.  She seeks annuity payments under the RCSBP and compensation for her DIC claims. Compl. ¶ 51.[10]  Along with the administrative record, the government provided the court with the divorce decree ending the marriage of Mr. Tillotson and Ms. Taylor-Tillotson. Def.'s Notice of Filing Administrative Record & Ex. A, ECF Nos. 16, 16-1.

On August 20, 2013, the government filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, or, in the alternative, for judgment on the administrative record. Def.'s Mot. at 1-2.  Ms. Taylor-Tillotson's response and cross-motion was filed on February 25, 2014.  She contends that the Army Board's decision regarding the duration of Mr. Tillotson's military service is contrary to law. *See* Pl.'s Cross-Mot. at 6.  Two hearings were conducted, one on December 3, 2013 and another on March 25, 2014.  The motion and cross-motion have been fully briefed and are now ready for disposition.[11]

---

[9]Ms. Taylor-Tillotson filed a response to the Army Board's decision, AR 3-61, which the Board considered as a request for reconsideration, AR 2-60.  That request was administratively closed after Ms. Taylor-Tillotson filed her complaint in this court. AR 2-59.

[10]In her complaint, Ms. Taylor-Tillotson sought an annuity under either the RCSBP, pursuant to 10 U.S.C. § 1448(a)(1)(B), or the Survivor Benefit Plan, pursuant to 10 U.S.C. § 1448(a)(1)(A). Compl. ¶ 51.  Because all the parties' filings, as well as the Army Board's decision, refer exclusively to the RCSBP, the court will consider only that ground for her claim.  In all events, Ms. Taylor-Tillotson would not be eligible for an annuity under the general Survivor Benefit Plan, which covers active duty military members, because Mr. Tillotson was not on active duty at the time of his death. *See* Survivor Benefit Plan (SBP), MyArmyBenefits, The U.S. Army official benefits website, http://myarmybenefits.us.army.mil/Home/Benefit_ Library/Federal_Benefits_Page/Survivor__Benefit_Plan_%28SBP%29.html (last visited Apr. 30, 2014).

[11]Ms. Taylor-Tillotson filed two motions to take judicial notice of fact and law, both of which the court granted.  Order of Dec. 2, 2013, ECF No. 31.  The first asked the court to take judicial notice of 10 U.S.C. § 10101 and two pages of publication entitled Reserve Components of the Armed Forces, Reserve Component Categories, issued by the Office of the Assistant Secretary of Defense for Reserve Affairs. Pl.'s Mot. to Take Judicial Notice, ECF No. 24.  The second asked the court to take notice of Montana state law which recognizes common law marriage. Pl.'s Mot. to Take Judicial Notice, ECF No. 26.  Ms. Taylor-Tillotson also sought to supplement the administrative record to include additional documents which were never before the Army Board. *See* Pl's Mot. to Supplement the Administrative Record, ECF No. 17.  The court denied this motion, stating that in reviewing the Army Board's decision, it cannot consider new evidentiary materials that were not before the Board.  Order of Dec. 4, 2013, ECF No. 32.

## STANDARDS FOR DECISION

When considering a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1) and for failure to state a claim under RCFC 12(b)(6), the plaintiff bears the burden to establish sufficient facts to show the court's subject matter jurisdiction over each claim, as well as the plausibility of the claims. *Montano Elec. Contractor v. United States*, 114 Fed. Cl. 675, 679 (2014) (citing *McAfee, Inc. v. United States*, 111 Fed. Cl. 696, 706 (2013), and *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). All unchallenged factual allegations in the complaint will be construed in the pleader's favor, but any disputed jurisdictional facts must be proved by a preponderance of the evidence. *McAfee*, 111 Fed. Cl. at 706 (internal citations omitted). While the court will construe Ms. Taylor-Tillotson's *pro se* pleadings liberally, this leniency does not absolve her of her obligation to prove jurisdiction. *See Heger v. United States*, 103 Fed. Cl. 261, 263 (2012).

The parties' cross-motions for judgment on the administrative record under RCFC 52.1(c) are resolved by reviewing the decision of the Army Board to determine whether it is arbitrary and capricious, unsupported by substantial evidence, or contrary to law. *See Holmes v. United States*, 98 Fed. Cl. 767, 780 (2011) (citing *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005), and *Godwin v. United States*, 338 F.3d 1374, 1378 (Fed. Cir. 2003)). The plaintiff bears the burden of proof and persuasion in establishing the unlawfulness of the agency's decision. *See Gossage v. United States*, 91 Fed. Cl. 101, 106 (2010) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346 1357 (Fed. Cir. 2005)). The court must render its decision on the record certified by the agency and may not conduct a *de novo* inquiry into the matter. *Holmes*, 98 Fed. Cl. at 779. If the court finds the record before the agency to be insufficient to permit meaningful judicial review, the court should remand the case back to the agency for additional investigation or consideration of additional evidence. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (holding that trial court abused its discretion by too freely permitting supplementation of the administrative record).

## ANALYSIS

The government's motion to dismiss for lack of subject matter jurisdiction focuses on Ms. Taylor-Tillotson's claim for dependency and indemnity compensation administered by the Department of Veterans Affairs. The government's motion to dismiss for failure to state a claim and the parties' cross-motions for judgment on the administrative record concern her claim for RCSBP benefits.

### A. Dependency and Indemnity Compensation

Dependency and Indemnity Compensation is paid by the Department of Veterans Affairs to a veteran's surviving spouse, children, and parents if the veteran died while on active duty or while suffering from a service-connected disability. *See Sharp v. United States*, 580 F.3d 1234, 1236 (Fed. Cir. 2009) (citing 38 U.S.C. § 1310(a)). The government argues that the court cannot exercise jurisdiction over Ms. Taylor-Tillotson's DIC claims because "'[t]he Secretary of Veteran's Affairs, not [the Court of Federal Claims], initially has jurisdiction over claims for

veterans' benefits.'" Def.'s Mot. at 9 (quoting *Farnsworth v. United States*, 106 Fed. Cl. 513, 518 (2012) (citing 38 U.S.C. § 511(a))). Ms. Taylor-Tillotson does not respond to this argument in her briefs. The court agrees that it lacks jurisdiction over the DIC claims. The United States Court of Appeals for Veterans Claims has exclusive jurisdiction to review determinations of veteran benefits, and any appeals from the Court of Appeals for Veterans Claims are heard by the United States Court of Appeals for the Federal Circuit. *See Addington v. United States*, 94 Fed. Cl. 779, 782 (2010) (citing 38 U.S.C. § 511); *see also Farnsworth*, 106 Fed. Cl. at 518-19. Ms. Taylor-Tillotson's claim for DIC benefits must be dismissed for lack of subject matter jurisdiction.

## B.  Reserve Component Survivor Benefits

The government asserts that Ms. Taylor-Tillotson's claim for RCSBP annuity payments should be dismissed for failure to state a claim because Ms. Taylor-Tillotson and Mr. Tillotson were divorced in 1979, Def.'s Mot. at 10-16, and, alternatively, that at the time of his death, Mr. Tillotson was not eligible for reserve retirement and thus could not elect to participate in the RCSBP, *id.* at 16-18. The court will address both of these alternative contentions.

### 1.  *Marital status.*

The RCSBP generally provides for spousal coverage, *see* 10 U.S.C. § 1448(a)(2)(B), and provisions can be made to provide an annuity to a former spouse, *see* 10 U.S.C. § 1448(b)(2)(A). In contending that Ms. Taylor-Tillotson was not Mr. Tillotson's spouse at the time of his death, Def.'s Mot. at 10 & n.4, the government relies on a divorce decree filed as an adjunct to, but not as part of, the administrative record which was before the Army Board, *see* Def.'s Notice of Filing Administrative Record & Ex. A. Ms. Taylor-Tillotson objects that the divorce decree was "not part of the administrative record compiled by the Army Board." Pl.'s Cross-Mot. at 7 (emphasis omitted). The government avers that "[i]t is of no moment that the [divorce] decree was [not] before the . . . [Army Board] for consideration, as 'it is proper to take judicial notice of a decision from another court or agency at any stage of the proceedings, even if it was not available to the lower court.'" Def.'s Mot. at 10 (quoting *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1316 n.4 (Fed. Cir. 2013)).

The court concurs that it may take judicial notice of the divorce decree in the procedural circumstances of this case even if the decree was not present in the record before the Army Board. *See Crowley v. McKinney*, 400 F.3d 965, 967 (7th Cir. 2005) (taking judicial notice of a divorce decree); *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) (same). Indeed, the court may also take into account the unsuccessful judicial proceedings initiated by Ms. Taylor-Tillotson to set aside the decree. *See supra*, at 3 n.5, 4 n.7. Such judicial notice only confirms the Army Board's finding of a divorce based upon Mr. Tillotson's having designated himself as divorced in Army records as early as 1983. *See* AR 4-76 (citing Mr. Tillotson's DD Form 1966/7.

In response, Ms. Taylor-Tillotson argues that she and Mr. Tillotson were common law spouses. Pl.'s Cross-Mot. at 3-4. Montana state law recognizes common law marriage for competent parties who assume a marital relationship and cohabitate. *See* Mont. Code Ann. § 40-

1-404 (2013).[12] Ms. Taylor-Tillotson points to evidence of two months of Mr. Tillotson's 1991 pay information, which include a dependency housing allowance for a spouse, as evidence that they were living together. Pl.'s Cross-Mot. at 7.[13] Because the divorce decree and common law marriage were not considered by the Army Board, Ms. Taylor-Tillotson requests that these arguments be remanded to the Army Board for consideration. *Id.*

A remand is unnecessary in this case. Ms. Taylor-Tillotson did not present to the Army Board any evidence and argument that she and Mr. Tillotson had a common law marriage. Instead, Ms. Taylor-Tillotson argued to the Board, and initially claimed to the court, that she and

---

[12]Montana Code Ann. § 40-1-404 (2013) is captioned "Putative spouse," and provides:

> A person who has cohabited with another to whom the person is not legally married in the good faith belief that the person was married to that person is a putative spouse until knowledge of the fact that the person is not legally married terminates that status and prevents acquisition of further rights. A putative spouse acquires the rights conferred upon a legal spouse, including the right to maintenance following termination of that status, whether or not the marriage is prohibited, as provided in 40-1-401, or declared invalid, as provided in 40-1-402. If there is a legal spouse or other putative spouses, rights acquired by a putative spouse do not supersede the rights of the legal spouse or those acquired by other putative spouses, but the court shall apportion property, maintenance, and support rights among the claimants as appropriate in the circumstances and in the interest of justice.

The immediately preceding statutory section of the Montana Code states that "[c]ommon law marriages are not invalidated by this chapter." Mont. Code Ann § 40-1-403 (2013); *see also In re Marriage of Swanner-Renner*, 209 P.3d 238, 241-42 (Mont. 2009) (recognizing under Montana law a consent to marry declared in Washington State, which does not recognize common law marriage, that ripened into a common law marriage in Montana after the parties moved to that state). In *Swanner-Renner*, the Montana Supreme Court applied the rebuttable presumption that a man and a woman "deporting themselves as husband and wife have entered into a lawful contract of marriage." *Id.* at 241 (quoting Mont. Code Ann. § 26-1-602(30) (2013)). The Court stated that "[t]he party seeking to establish a common law marriage in Montana must show that the parties were competent to enter marriage; that there was assumption of a marital relationship by mutual consent and agreement; that they cohabited; and that they acquired the reputation, character[,] and status of marriage in public." *Id.* (citing *In re Marriage of Geertz*, 755 P.2d 34, 37 (1988); *Miller v. Townsend Lumber Co.*, 448 P.2d 148, 152 (1968)).

[13]The government suggests that the dependency housing allocation allotted to Mr. Tillotson in 1991 may have actually been for a daughter, who is listed in his life insurance plan, AR 10B-454, but may have mistakenly been coded as a spouse on two pay statements. *See* Def's Mot. at 16 n.9; Def.'s Resp. to Pl.'s Cross-Mot. and Reply in Support of Def.'s Mot. to Dismiss, and, in the Alternative, Mot. for Judgment upon the Administrative Record ("Def.'s Resp.") at 8, ECF No. 37. The court need not, and does not, consider that speculative possibility.

Mr. Tillotson were "continually married." Compl. ¶ 18. Additionally, the contradictory position now being taken by Ms. Taylor-Tillotson does not have significant factual support and thus cannot be accepted as a basis to support a remand. The Army Board's decision that Mr. Tillotson and Ms. Taylor-Tillotson were divorced was supported by the factual record before the Board and is further supported by the recently located divorce decree.

### 2. *Qualifying period of reserve service.*

As an alternate ground for decision, the government argues that the Army Board acted reasonably and lawfully when it determined that Ms. Taylor-Tillotson was not eligible for RCSBP benefits because Mr. Tillotson did not complete the minimum service requirements necessary to qualify to participate in the program. Def.'s Mot. At 16-18. Ms. Taylor-Tillotson responds that the Army Board wrongly interpreted the law regarding the calculation of service time. Pl.'s Cross-Mot. at 4-6.

To qualify for an annuity under RCSBP, a service member must "be eligible for reserve-component retired pay but for the fact that [he or she is] under 60 years of age." 10 U.S.C. § 1448(a)(1)(B).[14] To be eligible for retired pay but for the age requirement, a service member must have completed a minimum of 20 years of qualifying service and, if completing those years before October 5, 1994, have served the last eight years of his qualifying service as a reserve component soldier. 10 U.S.C. § 12731(a).[15] Any service as a member of a regular

---

[14]Ordinarily, the service member will be notified of eligibility for RCSBP upon completing the pertinent service requirement. In pertinent part, 10 U.S.C. § 12731 provides:

> The Secretary concerned shall notify each person who has completed the years of service required for eligibility for retired pay under this chapter. The notice shall be sent, in writing, to the person concerned within one year after the person completes that service. The notice shall include notice of the elections available to such person under the Survivor Benefit Plan established under subchapter II of chapter 73 of this title and the Supplemental Survivor Benefit Plan established under subchapter III of that chapter, and the effects of such elections.

10 U.S.C. § 12731(d). If the person who completed the requisite years of service dies before being notified, the Army is still required to pay an annuity to the surviving spouse. *See* 10 U.S.C. § 1448(f).

[15]The statute provides a more lenient requirement of the last six years of service for service members who completed the minimum of 20 years after October 5, 1994 but before April 25, 2005. The statute states:

> (a) Except as provided in subsection (c), a person is entitled, upon application, to retired pay computed under section 12739 of this title, if the person —
>> (1) has attained the eligibility age applicable under subsection (f) to

component is not permitted in the computation of the last eight years of service. 10 U.S.C. § 12731(a)(3). The parties agree that Mr. Tillotson met the first requirement, accruing 21 years, 10 months, and 29 days of qualified service, but they differ as to whether he satisfied the requirement to serve his last eight years in a reserve component. *See* Pl.'s Cross-Mot. at 6; Def.'s Resp. at 4.

Ms. Taylor-Tillotson argues that the proper calculation of his reserve service should include time he spent, from March 17, 1969 until August 1, 1983, in the Army Reserve. Pl.'s Cross-Mot. at 4; Pl.'s Reply to Def.'s Resp. to Pl.'s Cross-Mot. and Reply in Support of Def.'s Mot. to Dismiss and, in the Alternative, Mot. for Judgment upon the Administrative Record ("Pl.'s Reply") at 3-4, ECF No. 38.[16] In support of her argument, she cites Army Regulation 135-180, which explains:

> The last 8 years of qualifying service need not be the last 8 years of military service, nor do they have to be continuous. *Examples*: An individual who[]

---

> (2) has performed at least 20 years of service computed under section 12732 of this title;
> (3) in the case of a person who completed the service requirements of paragraph (2) before April 25, 2005, performed the last six years of qualifying service while a member of any category named in section 12732(a)(1) of this title, but not while a member of a regular component, the Fleet Reserve, or the Fleet Marine Corps Reserve, *except that in the case of a person who completed the service requirements of paragraph (2) before October 5, 1994, the number of years of such qualifying service under this paragraph shall be eight*; and
> (4) is not entitled, under any other provision of law, to retired pay from an armed force or retainer pay as a member of the Fleet Reserve or the Fleet Marine Corps Reserve.

10 U.S.C. § 12731(a) (emphasis added). The six-year standard is not applicable to Mr. Tillotson because he completed his 20-year minimum prior to the transitional date. *See* AR 8I-105 to -06 (showing that he had 20 years of service by Feb. 13, 1994). The parties' arguments and the Army Board's decision center around the more lenient six-year standard rather than the more pertinent eight-year standard. The court will refer to an eight-year requirement, but the result would be the same if a six-year requirement applied.

[16]Ms. Taylor-Tillotson emphasized the fact that Mr. Tillotson served in three branches of service, the Army Reserve, the Army, and the Montana Army National Guard. *See* Pl.'s Reply at 3; Hr'g Tr. at 9:19-22. She asserts that the Army Board erred in its decision because it ignored Mr. Tillotson's service on active duty. Pl.'s Reply at 3. This reading of the Army Board's decision is incorrect. The Board did recognize Mr. Tillotson's active duty service in its calculations of his total qualifying service, but this service is not relevant to its calculation of whether he satisfied the required last eight years of reserve service. *See* AR 4-79; *see also* 10 U.S.C. § 12731(a)(3).

[s]erved 14 years as a reservist and then 6 years in the Regular Army must serve an additional 6 years in a [r]eserve status to qualify for retired pay. Even though this person has completed 20 years of qualifying service, only 2 of the last 8 years of such service met the requirement of (3) above. Thus he or she must serve an additional 6 years in one of these categories to meet the requirement of the last 8 years of qualifying service. [A person who] [s]erved 13 years in the Regular Army, then 7 years as a reservist, followed by 4 years in the Regular Army must serve an additional year in a [r]eserve status to qualify for retired pay. Even though he or she has completed over 20 years of qualifying service, he or she must serve 1 more year as a reservist to meet the requirement of the last 8 years of qualifying service.

Army Reg. 135-180, 2-1(a)(3) (1987), *available at* www.apd.army.mil/pdffiles/r135_180.pdf (last accessed May 2, 2014).[17] While Ms. Taylor-Tillotson focuses on the first sentence, the government points to the examples, which explain how this requirement applies to service members who have served both in active and reserve positions. Def.'s Resp. at 4-5. The first example is almost identical to Mr. Tillotson's situation. In this example, the service member must serve additional years in the reserve to qualify because the service on active duty interrupts the reserve service. Similarly, Mr. Tillotson's service in the Regular Army between August 2, 1983 and December 10, 1991 interrupts his service in the reserves. After active duty, he served a little over three years in the reserves as a member of the Montana Army National Guard. During this time, he completed his 20 years of qualifying service. Although some of the last eight years of his qualifying service were in the reserves, not all of them were. Ms. Taylor-Tillotson's statement that he completed over 13 years of qualified reserve service is correct, but the question is not the total time Mr. Tillotson served as a reserve member, rather the eight most recently accrued years of qualified service. Because Mr. Tillotson did not complete his last eight years of qualifying service in a reserve component, he did not qualify for reserve retirement, and thus he also was not eligible for RCSBP benefits.[18]

## CONCLUSION

For the reasons stated above, the government's motion to dismiss is GRANTED IN PART. Ms. Taylor-Tillotson's claim for Dependency and Indemnity Compensation is dismissed for lack of subject matter jurisdiction. In other respects, the government's motion for judgment on the administrative record is GRANTED. In ruling that Ms. Taylor-Tillotson is not eligible for benefits under Reserve Component Survivor Benefit Plan, the Army Board acted reasonably on

---

[17]This regulation was issued prior to the amendment of the corresponding statute, 10 U.S.C. § 12731, to include a more lenient six-year service requirement. However, both parties agree that the regulation's explanation regarding the last eight-year requirement is relevant to understanding the Army's requirements for reserve service retirement. Def.'s Resp. at 4; Pl.'s Cross-Mot. at 4.

[18]Even under the more lenient six-year requirement, Mr. Tillotson's service in the reserves would not have qualified him for retirement because he would still have failed to have completed his last six years of qualifying service as a reserve member.

the evidence of the record and in accord with applicable law. As a result, Ms. Taylor-Tillotson's motion for judgment on the administrative record is DENIED.

The Clerk shall enter judgment accordingly.

No costs.

It is so **ORDERED**.

_____
Charles F. Lettow
Judge